IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| CYNTHIA A. JACOBS,<br><br>    Plaintiff,<br><br>vs.<br><br>JOANNE B. BARNHART,<br>Commissioner of Social Security,<br><br>    Defendant. | No. C05-0052<br><br>**ORDER** |

This matter comes before the court pursuant to briefs on the merits of this application for disability insurance benefits. The parties consented to exercise of jurisdiction by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) (docket number 7). The court finds in favor of the plaintiff and against the defendant and the matter is remanded for an award of benefits.

## PROCEDURAL BACKGROUND

Cynthia Jacobs applied for Title II Social Security benefits and Title XVI supplemental security income benefits on December 27, 2002, alleging an inability to work since November 12, 2002, due to fibromyalgia, acid reflux, and depression. Her application was originally denied and denied again on reconsideration. A hearing before Administrative Law Judge (ALJ) Peter J. Baum was held September 14, 2004. In an opinion dated October 12, 2004, the ALJ denied benefits. On January 13, 2005, the Appeals Council denied the plaintiff's request for review. This action for judicial review was timely filed on March 22, 2005.

FACTUAL BACKGROUND

The plaintiff was born on August 26, 1958. (Tr. 43). She has a high school equivalent education. (Tr. 57). She is divorced and lives with her mother. (Tr. 44, 253). She has previously worked as an owner of a home improvement business, a shingle installer, a manager, a sales associate, an assembler, and a janitor. (Tr. 64).

The plaintiff was seen at Mercy Medical Center on numerous occasions between September 24, 2002, and October 22, 2003. (Tr. 169-195). Her complaints and diagnoses included sinusitis, left arm and neck pain[1], and back and lower leg pain[2]. (Tr. 170, 174, 187). Records indicate that the plaintiff presented to Mercy's physical therapy department on November 21, 2002 following a motor vehicle accident on November 12, 2002. (Tr. 180). The plaintiff reported that immediately following the accident she began to experience throbbing in her cervical spine and upper right shoulder, as well as a constant headache. (Tr. 180). The plaintiff also reported difficulty sleeping and noted that she had experienced problems with her neck in the past. (Tr. 180). The plaintiff's physical therapy records indicate that the plaintiff, through therapy, was unable to consistently decrease her pain or reduce her headaches. (Tr. 183). It is noted that the plaintiff was seeking orthopedic evaluation and had not returned to therapy for further follow-up. (Tr. 183).

---

[1] An MRI of the plaintiff's cervical spine was conducted on December 15, 2003, to evaluate the plaintiff's complaints of pain. The MRI and its comparison to a previous MRI indicated disc portrusion, "minimal to mild bilateral uncovertebral degenerative change," and no new abnormalities. (Tr. 175).

[2] An MRI of the plaintiff's lumbar spine was conducted on September 24, 2002, to further evaluate the plaintiff's complaints of pain. The MRI was "unremarkable." (Tr. 187).

The plaintiff was treated by Dr. Marc Wilkinson between October 29, 2002 and March 25, 2004. (Tr. 196). Dr. Wilkinson saw the plaintiff on November 18, 2002, for complaints of pain following a motor vehicle accident. (Tr. 212). The plaintiff reported that her neck pain and stiffness had not been alleviated by medication. (Tr. 212). Dr. Wilkinson adjusted the plaintiff's medications. (Tr. 212). On physical examination, Dr. Wilkinson noted that the plaintiff had some tenderness and "spasm of the trapezius muscles on the right." (Tr. 212).

The plaintiff reported to Dr. Wilkinson on January 13, 2003 that she continued to have quite a bit of pain and was finding it almost impossible to work. (Tr. 206). On February 19, 2003, the plaintiff was seen by Dr. Wilkinson for a follow-up examination of her fibromyalgia. (Tr. 205). She reported to Dr. Wilkinson that she really hadn't noticed "any improvement whatsoever," and that she was still having "quite a bit of pain, especially in the neck, shoulders, and lower back." (Tr. 205). On physical exam, Dr. Wilkinson noted that the plaintiff exhibited tender points "along the trapezius muscles bilaterally." (Tr. 205). Dr. Wilkinson saw the plaintiff on March 26, 2003. (Tr. 204). She complained that her fibromyalgia seemed "to be worse with a lot of pain in both legs and in her trapezius region, especially on the right." (Tr. 204). Dr. Wilkinson adjusted the plaintiff's pain medications. (Tr. 204).

The plaintiff was again seen by Dr. Wilkinson for a follow-up of her fibromyalgia on May 1, 2003. (Tr. 201). She reported that "the pain is almost unbearable" and stated that she was having difficulty sleeping as a result of the pain. (Tr. 201). She further reported that as a result of not sleeping well, she was experiencing day time fatigue. (Tr. 201). Dr. Wilkinson adjusted the plaintiff's medications and planned for a follow-up evaluation in one month's time. (Tr. 201). The plaintiff called Dr. Wilkinson on May 29, 2003, complaining that she was having a difficult time staying awake during the day. (Tr. 201). Dr. Wilkinson decreased the plaintiff's Neurontin medication. (Tr. 201). On

October 8, 2003, the plaintiff complained of nasal congestion and facial pain headaches. (Tr. 199).

Dr. Wilkinson saw the plaintiff on December 15, 2003, for complaints of sinusitis, overactive bladder, and depression. (Tr. 198). Dr. Wilkinson noted that the plaintiff was "under quite a bit of stress lately, as she has recently had to move in with her mother because of the loss of her house." (Tr. 198). On February 19, 2004, the plaintiff's complaints included being "achy" and having "generalized malaise." (Tr. 197). Dr. Wilkinson's assessed that the plaintiff had an upper respiratory infection and depression with anxiety. (Tr. 197).

Dr. Laurence Krain saw the plaintiff on October 29, 2002. (Tr. 213). The plaintiff reported that she still had "significant pain." (Tr. 213). Dr. Krain opined:

> [The plaintiff] has I feel a fibromyalgia type pain syndrome, likely compounded by depression.. . .It is unclear to what degree [the plaintiff's depression] contributes to her symptoms. I feel, though, that for her fibromyalgic type syndrome, she is best treated with an antidepressant. At this point she is not interested in such treatment and will address it further with Dr. Wilkinson.

(Tr. 213). Dr. Krain wrote a letter to Dr. Wilkinson concerning his evaluation of the plaintiff on October 29, 2002. (Tr. 215-16). Dr. Krain noted that on physical examination of the plaintiff, she did "have multiple trigger spots involving shoulder and pelvic girdles and lower extremities, and proximal upper extremities." Dr. Krain discussed that the plaintiff described "myalgias with normal examination in association with trigger spots." (Tr. 216). He further opined that the plaintiff had sleep disturbance and depression, and that he suspected a "fibromyalgic type pain syndrome." (Tr. 216).

Dr. James Pape conducted an initial evaluation of the plaintiff on December 26, 2002. (Tr. 208-10). He noted that the plaintiff was being evaluated for "several problems inclusive of legs constantly throbbing and numbness in the legs, hard to get . . . herself around, and low back pain." (Tr. 209). On physical examination of the plaintiff,

Dr. Pape noted that the plaintiff was "tender over all classic trigger point locations." (Tr. 208). Dr. Pape opined that the plaintiff "could be treated as a chronic fibromyalgia," and noted that the plaintiff had "previously been given a diagnosis by Dr. Krain of a fibromyalgia-like condition and I think that that probably is accurate based on my exam." (Tr. 208, 210).

The plaintiff was seen for treatment at Physiotherapy Associates between the December 26, 2002 and March 31, 2003 by Dr. Steven Eyanson and several physical therapists. (Tr. 124-147). Physical Therapist Erin Sawyer completed an evaluation concerning the plaintiff's treatment and therapy on January 3, 2003. (Tr. 148-49). Ms. Sawyer indicated that the therapy plan for treating the plaintiff's fibromyalgia included aquatic therapy to decrease pain and increase relaxation, and exercises for strengthening. (Tr. 149).

Dr. Dennis Weis completed a physical residual functional capacity assessment concerning the plaintiff on March 10, 2003, based on a review of her records. (Tr. 114-122). Dr. Weis opined that the plaintiff could occasionally lift twenty pounds, could frequently lift ten pounds, could stand, walk, and sit for about six hours in an eight-hour workday, and was unlimited in her ability to push or pull. (Tr. 115). Dr. Weis opined as to the plaintiff's credibility as follows:

> The [plaintiff's] allegations are to an extent consistent with evidence contained in the file[,] eroding her credibility to a degree, is the fact that she really takes no analgesics in spite of her pain and has essentially no documentation to support impairment due to headaches as she alleges.

(Tr. 122).

Dr. Eyanson saw the plaintiff on March 26, 2003. (Tr. 202-03). He noted that he had previously seen the plaintiff in 1989 with a diagnosis of low back pain which he felt was "probably related in part to her situation of depression." (Tr. 203). He further noted that the plaintiff had been given the diagnosis of fibromyalgia by Dr. Krain. (Tr. 203). The plaintiff reported to Dr. Eyanson that she continued to have pain in her right shoulder

and lower back. (Tr. 202). Dr. Eyanson opined that the plaintiff was "suffering from chronic myofascial pain, significant depression by her history, and concerns her ability to function." (Tr. 202).

Dr. Wilkinson wrote a letter "to whom it may concern" on May 22, 2003, concerning the plaintiff's limitations. (Tr. 179). Dr. Wilkinson opined:

> Please be advised that [the plaintiff] suffers from fibromyalgia and has been affected to the degree that she is unable to perform any sort of physical labor. She is unable to do any sort of lifting or strenuous physical activity, and it is my opinion that she is disabled and will remain so for the foreseeable future.

(Tr. 179).

Dr. Rene Staudacher completed a review concerning the plaintiff on July 22, 2003, based on a review of her records. (Tr. 167-68). Dr. Staudacher opined as to the plaintiff's condition and credibility, in relevant part, as follows:

> There are some inconsistencies that partially erode the credibility of the [plaintiff's] allegations. While the [plaintiff] has been diagnosed with .. . fibromyalgia . . . both Dr. Eyanson and Dr. Krain stated the [plaintiff] has underlying depression. They have not placed any specific limitation on her physically, but have indeed encouraged her to exercise. Despite the [plaintiff's] allegations of almost unbearable pain, she is not noted to be in distress on exams. Despite her allegations of constant headache, no specific treatment has been given and the [plaintiff] discusses this very little with her treating physicians.. . . Despite [the plaintiff's] allegations of extremely decreased functioning, it is noted that she is attending classes at the Community College. Dr. Wilkinson notes that the [plaintiff] is unable to perform any sort of physical labor and it is his opinion that the [plaintiff] is disabled and will remain so for the foreseeable future. . . . [T]his opinion is inconsistent with the treating rheumatologist's statement that no limitations were given and with inconsistencies already noted in the file.

Clinical Psychologist Herbert Notch completed a psychiatric review technique concerning the plaintiff on September 5, 2003, based on a review of her records. (Tr. 153-166). Dr. Notch opined that the plaintiff's daily living activities could be expected to be mildly restricted, she could be expected to have mild difficulty maintaining social function, concentration, persistence, and pace, and could be expected to have no periods of decompensation. (Tr. 163).

## CONCLUSIONS OF LAW

### Scope of Review

In order for the court to affirm the Administrative Law Judge's (ALJ) findings of fact, those findings must be supported by substantial evidence appearing in the record as a whole. See Lochner v. Sullivan, 968 F.2d 725, 727 (8th Cir. 1992); Cruse v. Bowen, 867 F.2d 1183, 1184 (8th Cir. 1989). Substantial evidence is more than a mere scintilla. It means relevant evidence a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1997); Cruse, 867 F.2d at 1184; Taylor v. Bowen, 805 F.2d 329, 331 (8th Cir. 1986). The court must take into account evidence which fairly detracts from the ALJ's findings. Cruse, 867 F.2d at 1184; Hall v. Bowen, 830 F.2d 906, 911 (8th Cir. 1987). Substantial evidence requires "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." Cruse, 867 F.2d at 1184 (quoting Consolo v. Federal Maritime Comm'n, 383 U.S. 607, 620 (1966)). The court must consider the weight of the evidence appearing in the record and apply a balancing test to contradictory evidence. Gunnels v. Bowen, 867 F.2d 1121, 1124 (8th Cir. 1989); Gavin v. Heckler, 811 F.2d 1195, 1199 (8th Cir. 1987).

### ALJ's Determination of Disability

Determining whether a claimant is disabled is evaluated by a five-step process. See 20 C.F.R. § 404.1520(a)-(f); Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

> The five steps are:
> (1) If the claimant is engaged in substantial gainful activity, disability benefits are denied.
> (2) If the claimant is not engaged in substantial gainful activity, her medical condition is evaluated to determine whether her impairment, or combination of impairments, is medically severe. If the impairment is not severe, benefits are denied.
> (3) If the impairment is severe, it is compared with the listed impairments the Secretary acknowledges as precluding substantial gainful activity. If the impairment is equivalent to one of the listed impairments, the claimant is disabled.
> (4) If there is no conclusive determination of severe impairment, then the Secretary determines whether the claimant is prevented from performing the work she performed in the past. If the claimant is able to perform her previous work, she is not disabled.
> (5) If the claimant cannot do her previous work, the Secretary must determine whether she is able to perform other work in the national economy given her age, education, and work experience.

Trenary v. Bowen, 898 F.2d 1361, 1364 n.3 (8th Cir. 1990) (citing Bowen v. Yuckert, 482 U.S. at 140-42); 20 C.F.R. § 404.1520(a)-(f).

"To establish a disability claim, the claimant bears the initial burden of proof to show that he is unable to perform his past relevant work." Frankl v. Shalala, 47 F.3d 935, 937 (8th Cir. 1995) (citing Reed v. Sullivan, 988 F.2d 812, 815 (8th Cir. 1993)). If the claimant meets this burden, the burden of proof then shifts to the Commissioner to demonstrate that the claimant retains the physical residual functional capacity (RFC) to perform a significant number of other jobs in the national economy that are consistent with the claimant's impairments and vocational factors such as age, education and work experience. Id.

Under the first step of the analysis, the ALJ determined that the plaintiff had not engaged in substantial gainful employment since November 12, 2002. At the second step,

8

the ALJ determined the plaintiff had the following impairments: fibromyalgia. At the third step, the ALJ determined that the plaintiff's impairments were not equivalent to one of the listed impairments. At the fourth step, the ALJ determined the plaintiff had the following residual functional capacity (RFC):

> [The plaintiff] retains the residual functional capacity to perform light work. She can lift and carry 20 pounds occasionally and 10 pounds frequently. She can sit, stand and walk about 6 hours in an 8-hour workday. She can occasionally climb, balance, stoop, kneel, crouch and crawl. She has no mental limitations.

Based on this RFC, the ALJ determined that the plaintiff could perform her past relevant work as a gas station manager.

## Opinion of Treating Physician

"A treating physician's opinion should not ordinarily be disregarded and is entitled to substantial weight. A treating physician's opinion regarding an applicant's impairment will be granted controlling weight, provided the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000) (citation omitted). The regulations require the ALJ to give reasons for giving weight to or rejecting the statements of a treating physician. See 20 C.F.R. § 404.1527(d)(2). "The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." Hogan v. Apfel, 239 F.3d 958, 961 (8th Cir. 2001).

The plaintiff argues that the ALJ improperly disregarded the opinion of Dr. Wilkinson, the plaintiff's treating physician, that the plaintiff was disabled and could not work, and that in his opinion, she would remain disabled for the foreseeable future. The ALJ evaluated Dr. Wilkinson's opinion as follows:

> The undersigned has considered the RFC and conclusion by Dr. Wilkinson, and has rejected [it] both as conclusory and unsupported by the medical evidence of record. . . . In

9

> addition, Dr. Wilkinson's opinion is inconsistent with the treating rheumatologist's [Dr. Eyanson's] statement that no limitations were given . . . but instead [the plaintiff] was encouraged to exercise. Therefore, more weight is given to Dr. Eyanson's opinion after considering all the evidence in the file.

In his reference to Dr. Eyanson's "statement that no limitations were given," the ALJ cites Exhibit 8F, page 7 of the record (Tr. 202). The court has reviewed this portion of the record, and finds that it does not support the ALJ's characterization of Dr. Eyanson's opinion concerning the plaintiff's limitations. Specifically, Dr. Eyanson's opinion, as set forth at Exhibit 8F, page 7 (Tr. 202), is as follows:

> I would suggest that [the plaintiff] see Dr. Wilkinson since Effexor does not seem to be helping her much.. . . She would benefit I believe by continuing physical therapy with emphasis on stretching and aerobic exercise. She may also benefit from specific counseling for depression as well as other modalities which could be offered . . . [which] could include biofeedback, relaxation techniques, etc. With her multiple somatic complaints and underlying affective symptoms, it is not clear what her functional capacity really is.

After rejecting the opinion of Dr. Wilkinson that the plaintiff is disabled, the ALJ went on to instead rely upon the RFC proffered by Dr. Staudacher, a state agency physician who did not examine the plaintiff. Because Dr. Staudacher's medical assessment, based solely upon a review of the plaintiff's records, is not supported by "superior medical evidence," and because Dr. Wilkinson did not offer "inconsistent opinions," the ALJ erred in not giving Dr. Wilkinson's opinion controlling weight and instead relying upon Dr. Staudacher's RFC. See Hogan v. Apfel, 239 F.3d at 961; Singh v. Apfel, 222 F.3d at 452. In light of Dr. Wilkinson's opinion that the plaintiff is disabled and cannot work due to her fibromyalgia, a remand for vocational expert testimony is not necessary.

IT IS ORDERED

That the ALJ's decision is reversed, and this matter is remanded for an award of benefits.

January 23, 2006.

JOHN A. JARVEY
Magistrate Judge
UNITED STATES DISTRICT COURT